IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

L.M., by and through her parent and natural ) 
guardian, RACHEL BARRON and RACHEL ) 
BARRON, in her own right, ) 
                Plaintiffs, ) 
 ) 
     vs )      Civil Action No. 17-483
 ) 
PITTSBURGH PUBLIC SCHOOL DISTRICT, et ) 
al., ) 
             Defendants. ) 

## MEMORANDUM OPINION AND ORDER

Plaintiffs, L.M., by and through her parent and natural guardian, Rachel Barron ("Barron"), and Barron in her own right, bring this federal civil rights action pursuant to 42 U.S.C. § 1983 arising out of three incidents that occurred over a six-month period while L.M. was a fourth grader at King PreK-8 School in the City of Pittsburgh. Named as Defendants are the Pittsburgh Public School District, Superintendent Anthony Hamlet, Principal Leah McCord, Assistant Principal Andrea Brown and a teacher whose identity is not yet known and is therefore identified as Jane Doe. Plaintiffs allege that Defendants: 1) refused to allow L.M. to be picked up from school by Barron's fiancé as Barron instructed when she was in the hospital and instead failed to supervise her and allowed her to walk home to an empty house; 2) insisted that L.M. remove a facial tattoo on the day after Halloween and forcibly scrubbed it from her face, causing injury to her; and 3) took no action when L.M. was assaulted in a music class, and thereafter sent L.M. to a second-grade class and accused her as being at fault during a school assembly. In addition, Plaintiffs allege in their Amended Complaint that, after the original complaint was filed in this case, Defendants refused to allow L.M. to go on a field trip.

Presently submitted for disposition is a motion to dismiss the Amended Complaint, filed

by Defendants. For the reasons that follow, the motion will be granted with respect to the federal civil rights claims and the state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Facts

L.M. is a nine-year old child who resides with her parent (Barron) in the Pittsburgh Public School District, which is supervised by Anthony Hamlet, the Superintendent. At the time of the facts asserted herein, L.M. was enrolled as a fourth grader at King PreK-8, where the principal is Leah McCord and the assistant principal is Andrea Brown. An unidentified teacher in the school (Jane Doe) is also a defendant. All individuals are sued in their individual and official capacities. (Am. Compl. ¶¶ 7-14.)[1]

The Hospital Incident

On October 20, 2016, Barron was pregnant and went into early labor. At approximately 1:00 p.m., she called the elementary school to request an early dismissal, but was told that early dismissals could not be handled over the phone. As a result, she sent her fiancé, Dwayne Sims, to the school to check out the children[2] early, but he was refused because his name was not listed in L.M.'s file. (Am. Compl. ¶¶ 20-24.)

At approximately 2:15 p.m., Barron received a telephone call from the school police officer asking for permission for the children to leave with Sims, and she gave oral permission, but Brown, the Assistant Principal (who was also on the call), refused to accept oral permission and instead indicated that Barron would have to write a letter allowing L.M. to leave with Sims. Brown also stated that Barron could allow the children to be brought to the hospital with a guidance counselor, who would bring the appropriate paperwork for her to sign. She was told

---

[1] ECF No. 12.
[2] Although the Amended Complaint is less than clear, it would appear that L.M.'s younger brother (who is noted as not being a party to this action) was also at school with L.M. that day.

that the guidance counselor would take L.M. to the hospital, and Sims was also given this information when he was escorted to his car by a school police officer. But when the guidance counselor arrived, she brought with her only the paperwork and not L.M. and Barron was confused and panicked. She spoke to Brown and Principal McCord, neither of whom knew the whereabouts of the children. Sometime later, Barron received a phone call from her aunt, telling her that she found L.M. (and L.M.'s younger brother, who is not a party to this action) walking on a nearby street, blocks from the school. McCord stated that she would investigate the matter and viewed a video that pointed toward the entry door and initially told Barron that L.M. left with an unknown man, but later refused to allow Barron to see the video and said that the footage was unclear. (Am. Compl. ¶¶ 25-38.)

<u>The Tattoo Incident</u>

On November 1, 2016, L.M. came to school with a Halloween tattoo on her face from the night before. McCord saw L.M. and stated that she needed to take it off, but L.M. asked if she could continue to wear it and take it off that evening and McCord agreed. However, a teacher (Jane Doe) saw the tattoo and insisted that L.M. had to remove it. L.M. attempted to wash the tattoo from her face, but it was not the kind that could be removed with soap and water. Doe saw the tattoo still on L.M.'s face and walked L.M. back to the bathroom, where she forcibly removed the tattoo from L.M.'s face. Doe rubbed L.M.'s face with such force that bruising, redness and swelling resulted around L.M.'s eye area, the location of the tattoo. Barron confronted McCord about the incident and McCord said she would review the video to determine which teacher had done this. But McCord later told Barron that the video was not working that day and the teacher could not be identified. (Am. Compl. ¶¶ 39-47.) Plaintiffs allege that:

> The school, nonetheless, notified the school police of this incident, wherein the school police conducted an investigation. This investigation led to a

child line report being made on the parents for the abuse produced by the teacher. At no point did the Principal ever talk to the teachers on that hallway or take any other actions to hold any teacher accountable.

(Am. Compl. ¶ 48.)

<u>The Music Class Incident</u>

On March 31, 2017, L.M. was attacked by a boy in her music class; he shoved her to the ground, causing her head to hit the floor. Plaintiffs allege that the music teacher observed the attack but did not intervene and never reported the incident to the administration or to Barron. (Am. Compl. ¶¶ 49-50.) After this occurred, the bell rang and all the students lined up to go to the next class except L.M. Plaintiffs allege that the music teacher knew or should have known that L.M. was not with the other students, but he walked the other students to their next class anyway.[3] While in the classroom by herself, L.M. was subsequently assaulted a second time by three more boys. Barron questioned the administration about the incident and McCord proceeded to blame L.M. for getting assaulted by the students. When Barron asked about video footage being available to determine which boys assaulted L.M., she was again told that there was no video available. (Am. Compl. ¶¶ 51-55.)

Plaintiffs allege that L.M. has not been allowed back in her music class for some time thereafter and was forced to sit in a second-grade classroom instead of attending music class "to make sure she doesn't do that again," according to Brown. There was later an assembly "using L.M. as a scapegoat for why the children should get in line during class transitions." (Am. Compl. ¶¶ 56-57.)

Plaintiffs allege that, from the first incident on October 20, 2016 to the last incident on March 31, 2017, emails have been sent to the Superintendent putting the School District on

_____

[3] In the original complaint, the music teacher was named as a defendant, but he is not named in the Amended Complaint.

notice of the incidents, including the names of the people involved and the continuous claim of the non-working video, but no response has been made. Finally, Plaintiffs allege that, after they filed this case on April 13, 2017 and an article about it appeared in a local newspaper, L.M. was told on May 2, 2017 that she would not be going on a school field trip. She was the only student in her grade not allowed to go, despite having turned in the appropriate permission forms. (Am. Compl. ¶¶ 58-59.) Plaintiffs allege that "L.M. and Rachel Barron have been psychologically traumatized by these events. L.M. cries every day and has no desire to return to school. She desires to move in with her Grandmother, so she can attend a different school." (Am. Compl. ¶ 60.)

Procedural History

Plaintiffs filed this action on April 13, 2017 (ECF No. 1). On June 15, 2017, Defendants filed a motion to dismiss (ECF No. 7). In response, Plaintiff filed an Amended Complaint on July 7, 2017 (ECF No. 12) and the motion to dismiss was dismissed (ECF No. 13). Jurisdiction is based on the federal civil rights claims asserted, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367(a). Count I alleges that the School District and Jane Doe violated L.M.'s substantive due process right to bodily integrity with respect to the tattoo incident. Count II alleges that the School District, Hamlet, McCord and Brown showed reckless indifference to L.M.'s rights in the tattoo incident. Count III alleges that the School District, Hamlet, McCord and Brown violated Barron's substantive due process right to parental care, custody and control of her children during the hospital incident. Count IV alleges the School District is liable under Monell[4] for failing to train and supervise regarding the use of force by a teacher, failing to identify and take remedial or disciplinary action against

---

[4] Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978).

teachers and administration, failing to train teachers and staff on how to not violate the constitutional rights of others and failing to follow established policies, procedures, directives and instructions regarding appropriate teacher-student and teacher-parent interactions under these circumstances. Count V alleges that McCord and Brown are liable for subjecting Barron to intentional infliction of emotional distress (IIED). Count VI alleges that Hamlet, McCord and Brown subjected L.M. to willful misconduct with respect to the music class incident. Count VII alleges that Defendants are liable for compensatory and punitive damages with respect to both Barron and L.M. Count VIII alleges that Defendants are liable for Plaintiffs' attorney's fees.

On July 24, 2017, Defendants filed another motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14). Plaintiffs filed a response on August 15, 2017 (ECF No. 18) and on August 29, 2017, Defendants filed a reply brief (ECF No. 19).

Defendants argue that: 1) Count I should be dismissed because Plaintiffs do not allege individual capacity claims and because they do not allege "conscience-shocking" behavior or that Defendants had a policy of employing excessive force; 2) Count II should be dismissed because helping a student remove a tattoo cannot constitute reckless indifference and, given that Plaintiffs admit that an investigation into this incident occurred, they cannot contend that Defendants were indifferent; 3) Count III should be dismissed because it does not allege an interference with parental control; 4) Count IV should be dismissed because it alleges no basis for Monell liability; 5) Count V should be dismissed because the School District is immune from IIED claims and refusing to allow a minor to leave school with a stranger can hardly be called "outrageous" behavior; 6) Count VI should be dismissed because the allegations fail to state a claim (having a faulty video camera, temporarily moving a fourth grader to a second-grade class, holding a school assembly, preventing a student from going on a field trip); 7) punitive damages

may not be obtained under § 1983 against municipalities and Plaintiffs have not pleaded actual injury; and 8) Plaintiffs provide no basis for obtaining attorney's fees.  In the alternative, should any claims survive, Defendants move that Plaintiffs be required to submit a more definite statement pursuant to Rule 12(e).[5]

Plaintiffs respond that: 1) they have stated individual capacity claims and, contrary to Defendants' assertion, Count I does identify the interest protected, namely L.M.'s interest in her bodily integrity which was violated when Jane Doe forcibly rubbed the tattoo from her face, and whether such conduct shocks the conscience depends upon the amount of time defendants had to deliberate and under the circumstances deliberate indifference was demonstrated; 2) Plaintiffs do not admit that Jane Doe was "assisting" L.M. to remove the tattoo and the School District demonstrated knowledge, acquiescence and condoning of Jane Doe's conduct; 3) Defendants interfered with Barron's fundamental right as a parent to determine how and with whom L.M. would leave the school building; 4) the official policies presented here consist of allowing Jane Doe to assault L.M., allowing a principal to lose a child, allowing a principal to bully L.M. at a school assembly and allowing school officials to deny L.M. the ability to participate in a field trip; 5) Brown and McCord acted outrageously and the hospital incident demonstrated behavior that is not tolerated in a civilized society; 6) the School District demonstrated willful misconduct by keeping L.M. in a second-grade classroom and denying her the ability to go on a field trip; 7) the Amended Complaint states a basis for both compensatory and punitive damages; and 8) the request for attorney's fees is properly pleaded.  In addition, Plaintiffs deny that Defendants have provided a basis for requiring them to file a more definite statement and such motions are

_____

[5] As explained below, because the federal civil rights claims should be dismissed, the Court will dismiss the supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3) and need not address the arguments regarding these claims.  In addition, because the case will be dismissed, the Court need not address the alternative motion for a more definite statement.

disfavored.

In a reply brief, Defendants argue that: 1) removing a facial tattoo that is against school policy does not constitute a violation of L.M.'s right to bodily integrity under the substantive due process clause; 2) Plaintiffs have not pointed to anything to support a claim for reckless indifference; 3) not releasing L.M. to a stranger cannot state a claim for a substantive due process violation and L.M. walked home as she did every day; 4) there is no basis for <u>Monell</u> liability; 5) the School District could not have intended to cause harm by refusing to release L.M. to a stranger; 6) Plaintiffs cite cases involving bullying, not willful misconduct, and refer to minor incidents; 7) the Amended Complaint states no basis for damages; and 8) there is no basis for attorney's fees. Finally, Defendants contend that there was no school assembly and thus they assert that they cannot respond to Plaintiffs' claims unless more information is provided.

<u>Standard of Review</u>

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (citations omitted). Mere "possibilities" of

misconduct are insufficient.  Id. at 679.  The Court of Appeals has summarized the inquiry as

follows:

> To determine the sufficiency of a complaint, a court must take three steps.
> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868
> (2009). Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth." Id. at 1950.
> Third, "whe[n] there are well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly give rise to an
> entitlement for relief." Id. This means that our inquiry is normally broken into
> three parts: (1) identifying the elements of the claim, (2) reviewing the complaint
> to strike conclusory allegations, and then (3) looking at the well-pleaded
> components of the complaint and evaluating whether all of the elements identified
> in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Counts I-IV: Civil Rights Claims

In Counts I-IV of the Amended Complaint, Plaintiffs allege civil rights claims pursuant to

§ 1983.  It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or any other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method

for vindicating federal rights elsewhere conferred by those parts of the United States Constitution

and federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "The

first step in any such claim is to identify the specific constitutional right allegedly infringed."

Albright v. Oliver, 510 U.S. 266, 271 (1994).  See also Baker, 443 U.S. at 140; Graham v.

Connor, 490 U.S. 386, 394 (1989).  However, "[c]ertain wrongs affect more than a single right

and, accordingly, can implicate more than one of the Constitution's commands.  Where such

multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's dominant' character.  Rather, we examine each constitutional provision in turn."  <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 70 (1992).

<u>Fourteenth Amendment</u>

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  Plaintiffs allege that the actions of the Defendants violated the substantive due process clause by depriving L.M. of her liberty interest in bodily integrity in the tattoo incident (Count I) and by depriving Barron of her right to parental care, custody and control with respect to the hospital incident (Count III).  They further allege that Defendants demonstrated reckless indifference to L.M.'s rights in the tattoo incident (Count II) and that the School District is liable for its official policies which injured both L.M. and Barron (Count IV).

"Individuals have a constitutional liberty interest in their personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment."  <u>Phillips</u>, 515 F.3d at 235 (citations omitted).  "The Supreme Court has recognized a 'fundamental liberty interest of natural parents in the care, custody, and management of their child."  <u>Miller v. City of Phila.</u>, 174 F.3d 368, 373 (3d Cir. 1999) (quoting <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982)).  Therefore, the Fourteenth Amendment is implicated in this case.[6]

---

[6] Plaintiffs contend that Defendants have accused them of improperly raising a Fourth Amendment excessive force claim relating to the tattoo incident by citing <u>Kurilla v. Callahan</u>, 68 F. Supp. 2d 556 (M.D. Pa. 1999).  The Amended Complaint does not contain a Fourth Amendment claim and Plaintiffs indicate in their brief that they did not intend to raise a Fourth Amendment claim (ECF No. 18 at 3-4), so this issue need not be discussed further.

Substantive Due Process Claims

As the Supreme Court has explained, it is "the substantive component of the Clause that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). In Collins, the Supreme Court clarified that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: 1) whether plaintiff's harm was caused by a constitutional violation, and 2) if so, whether the city is responsible for that violation." Id. at 120. Thus, Plaintiffs do not argue that Defendants denied L.M. her right to bodily integrity or Barron her right to parental control without affording them appropriate procedural protections, but that they are liable for the incidents as a general matter.

In D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1368 (3d Cir. 1992) (en banc), a minor child (D.R.) alleged that several male students in a graphic arts class physically, verbally and sexually abused her over the course of a school year by grabbing her and forcing or carrying her into a unisex bathroom or a darkroom, both of which were part of the graphic arts classroom. Although D.R. did not report these incidents to the student teacher, Susan Peters, she alleged that "Peters was or should have been in the classroom during the time of the acts complained of and either heard or should have heard the incidents taking place." Id. at 1366. In addition, a public high school student (L.H.) alleged that, after another student attempted to force her into the bathroom, she reported this incident to the assistant director of the school, but he failed to take any corrective action. The court held that the students possessed a liberty interest in their own bodily integrity but, as discussed below, none of the theories that the plaintiffs articulated were sufficient to impose liability on the state.

In <u>Collins</u>, the Supreme Court rejected a claim asserted on behalf of a sanitation worker who died of asphyxia after entering a manhole to unstop a sewer line because "the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimum levels of safety and security in the workplace." 503 U.S. at 130. As the Supreme Court has stated:

> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.

<u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 196-97 (1989) (citations and footnote omitted). Thus, no liability attached when county authorities, although aware that Joshua DeShaney might be a victim of child abuse, nevertheless returned him to the custody of his father, who beat him to the point that he suffered severe brain damage.

Plaintiffs have not cited a specific theory of liability upon which they are relying. The Court of Appeals for the Third Circuit held in <u>D.R.</u> that the "special relationship" exception to not holding municipalities liable for alleged failures to act does not apply in a school setting. 972 F.2d at 1372. More recently, the court revisited the issue but reached the same result. <u>See Morrow v. Balaski</u>, 719 F.3d 160, 167-76 (3d Cir. 2013) (en banc) (reviewing case law since <u>D.R.</u> and concluding that it did not alter the conclusion that "public schools, as a general matter, do not have a *constitutional* duty to protect students from private actors.")

Other than the "special relationship" theory, the other only exception to not holding municipalities liable for alleged failures to act is the "state-created danger theory." <u>Morrow</u>, 719 F.3d at 167. The Court of Appeals has noted that:

> DeShaney stands for the proposition that the Due Process Clause imposes
> no affirmative duty to protect a citizen who is not in state custody. [H]owever,
> this does not mean that no constitutional violation can occur when state authority
> is affirmatively employed in a manner that injures a citizen or renders him "more
> vulnerable to injury from another source than he or she would have been in the
> absence of state intervention." Schieber v. City of Philadelphia, 320 F.3d 409,
> 416 (3d Cir. 2003). This complement to the DeShaney holding has come to be
> known in its progeny as the "state-created danger doctrine."

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (footnote omitted).

> The Court of Appeals has adopted a four-part test for the state-created danger theory:
>
> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct;
> (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was
> some relationship between the state and the plaintiff; and (4) the state-actor used
> his authority to create an opportunity for danger that otherwise would not have
> existed.

Phillips, 515 F.3d at 235 (citing Bright, 443 F.3d at 281) (footnote omitted). In Bright, the court

emphasized that:

> [l]iability under the state-created danger theory is predicated upon the states'
> affirmative acts which work to the plaintiff's detriments in terms of exposure to
> danger. It is the misuse of state authority, rather than a failure to use it, that can
> violate the Due Process Clause.

443 F.3d at 282 (quoting D.R., 972 F.2d at 1374). In D.R., the court concluded that a state-

created danger theory (which it had not yet recognized) could not be applied because the school

district took no affirmative action to create or increase the students' risk of danger. The

plaintiffs noted that the school district had a unisex bathroom with a lock on it and a darkroom

with a lock on it, but the harassment could have occurred even if the school room had two

bathrooms and the locks were there for a proper purpose. The plaintiffs alleged that the class

was placed under the supervision of an inadequately trained and supervised student teacher, but

the court held that this act increased the risk of the students' receiving a poor education, not the

kind of harm they suffered. The plaintiffs alleged that the state actors failed to report the

incidents to parents or other individuals in authority, but the court held that this duty arose under

state law, and the violation of state-law duties is not sufficient to state a claim under § 1983.

Finally, the plaintiffs alleged that the defendants had failed to investigate and stop the

misconduct, but the court held that these allegations indicated only nonfeasance, rather than

affirmative acts of misfeasance which would be actionable.  972 F.2d at 1374-75.

    In Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997), the Court of

Appeals held that the school district did not place a teacher in a dangerous environment stripped

of means to defend herself and did not place her in a unique confrontational encounter when it

allowed construction workers to use an unlocked back entrance to the school building, and a

mentally unstable woman entered through this door and shot her.  Their actions did increase the

risk of harm, but this was not sufficient and the increased risk did not relate directly to the harm

the teacher suffered.  Id. at 914-15.  See also Page by Page v. School Dist. of Phila., 45 F. Supp.

2d 457, 465 (E.D. Pa. 1999) (school officials did not meet fourth element when they failed to

prevent attack on middle school student by other students, even when they had entered into an

agreement with the parents of the victim to prevent her from being harmed).  Cf. Maxwell by

Maxwell v. School Dist. of City of Phila., 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999) (special

education student met fourth element when school district defendants locked the classroom door,

preventing her from leaving, teacher told disruptive students they could do what they wanted to

as long as they did not bother her, teacher witnessed attempted rape of another student but did

nothing and teacher saw two students take plaintiff and blackboard to the back of the room where

they raped her but did nothing).  See also Phillips, 515 F.3d at 236-37 (when plaintiff alleged that

co-workers provided 911 call center employee with information that he used to trace and shoot

his former girlfriend, her new boyfriend and the girlfriend's sister, this was sufficient to state the

affirmative act necessary to maintain a state-created danger theory of liability).

In this case, L.M. was injured by students in the music room, not teachers. Even when the music teacher allegedly removed all the other students from the room and left L.M. there alone and she was assaulted a second time, this action did not "create the danger" or "render the citizen more vulnerable to danger than had the state not acted at all." Bright, 443 F.3d at 281. Thus, Plaintiffs have provided no basis upon which liability could be imposed with respect to the music room incident.

With regard to the hospital incident, Plaintiffs' allegations suffer from numerous fatal flaws. First, the claim is not based upon any injury to L.M., as she is not alleged to have suffered any injury when she was not released to Sims, or when she was not taken to Barron in the hospital (as Plaintiffs allege that Brown indicated would occur) or when she was allowed to walk home to an empty house. Moreover, as Defendants observe, had they released L.M. to a stranger not listed on the approved form, they would have risked liability for that action. See L.R. v. School Dist. of Phila., 836 F.3d 235 (3d Cir. 2016) (parents stated a claim under the state-created danger theory when school allowed kindergarten student to be released to stranger who assaulted her). A fortiori, schools cannot be held liable for refusing to release a student under these circumstances.

In their brief, Plaintiffs appear to contend that Defendants should be held liable for allowing L.M. to leave the school unsupervised, such that she was later found by Barron's aunt walking on a nearby street, blocks from the school. Despite the language employed in Plaintiffs' brief, however, the Amended Complaint does not actually allege that Defendants should be held liable for allowing L.M. to leave the school unsupervised.[7] Moreover, as noted above, L.M. did

---

[7] In their reply brief, Defendants state that Plaintiffs have omitted the fact that L.M. was, by

not suffer any injury as a result of leaving the school unsupervised.

Rather, it would appear that Plaintiffs' contention is that Defendants allowed L.M. to walk home when there was no adult at home, hence they argue that: "Defendants' decision-making would've allowed her to go home to an empty house."  (ECF No. 18 at 8.)  Significantly, Plaintiffs' complaint is not based upon potential threats to L.M.'s safety, but upon "interference" with Barron's parental authority to decide "with whom she left the school and whether she went home to an empty house."  (ECF No. 18 at 8.)  Plaintiffs offer no support for the theory that the Defendants' actions interfered with her parental rights.

The Court of Appeals has recognized that whenever "any burden on family integrity is indirect . . . [it] will not give rise to a violation of substantive due process."  Philadelphia Police and Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia, 874 F.2d 156, 168 (3d Cir. 1989).  The court has also indicated that there is a "distinction between actions that strike at the heart of parental decision-making authority on matters of the greatest importance and other actions that … are not of constitutional dimension."  C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 184 (3d Cir. 2005).  See J.S. ex rel. Snyder v. Blue Mtn. Sch. Dist., 650 F.3d 915, 934 (3d Cir. 2011) (school district did not interfere with parents' right to discipline their child by suspending student based on the fact that she created an inappropriate internet profile of her principal using a home computer, because parents could still take whatever actions they felt were appropriate).

Defendants did not directly interfere with Barron's right to parental control.  They did not even interfere with Barron's authority to decide with whom L.M. could leave school; rather, Barron exercised her authority to make that decision when she completed paperwork which did

designation, a walking student, meaning that it was typical for her to be released at the end of the day to walk home.  (ECF No. 19 at 5.)

not include Sims (or Barron's aunt, presumably) as someone authorized to pick L.M. up from school. Nor can the school be held liable because it allowed L.M. to go home to an empty house, even if this was against Barron's wishes.

Plaintiffs argue, in effect, that the school's policy of requiring written permission to allow L.M. to leave school with Sims should have been "overridden" because of the emergency situation presented. Again, however, they offer no support for this contention.

In addition: "To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). Plaintiffs note that the Court of Appeals has held that, in non-urgent situations, deliberate indifference can satisfy the shocks-the-conscience standard. Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006). However, they offer no support for the claim that a school district's refusal to release a nine-year old child to an individual not listed on the approved form demonstrates deliberate indifference to Barron's parental rights such that it constitutes conscience-shocking behavior. In conclusion, the substantive due process clause of the Fourteenth Amendment does not apply to the convoluted scenario Plaintiffs have described. Therefore, with respect to Count III, the motion to dismiss the Amended Complaint will be granted.

This leaves the tattoo incident, which allegedly did involve affirmative actions of School District personnel. The Supreme Court has held that corporal punishment in public schools implicates a constitutionally protected liberty interest where "school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain." Ingraham v. Wright, 430 U.S. 651, 674 (1977). However, de minimis impositions do not implicate the Fourteenth Amendment. Id.

The Court of Appeals has indicated the following in school punishment situations:

> To avoid conflating the various elements of the shocks the conscience test into a vague impressionistic standard, we analyze its four elements in turn: a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 173 (3d Cir. 2001).

Having reviewed other cases involving school discipline, the Court concludes that Plaintiffs have not stated a claim under these circumstances.  See JGS v. Titusville Area Sch. Dist., 737 F. Supp. 2d 449 (W.D. Pa. 2010) (student aide placed her hand over the mouth of an autistic student, allegedly forcing him to ingest hand sanitizer, but applying Gottlieb test, court found that the behavior did not shock the conscience); Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 599 (S.D.N.Y. 2000) (eighth-grade student whose wrist was twisted by teacher, resulting in red marks, an upset stomach and headaches, could not maintain a substantive due process claim); Kurilla v. Callahan, 68 F. Supp. 2d 556, 563-64 (M.D. Pa. 1999) (teacher grabbed student and pulled him into the teacher's fists, in effect hitting him, but the court held the teacher's behavior was not conscience-shocking); Smith v. Half Hollow Hills Ctr. Sch. Dist., 298 F.3d 168 (2d Cir. 2002) (teacher who slapped a student in the face with full force did not commit conscience-shocking behavior).

Cases which have proceeded against school districts have involved much more severe behavior.  See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 249 (2d Cir. 2001) (teacher who dragged student across the gym floor, choked student and slammed his head into the bleachers four times, rammed his forehead into a metal fuse box and punched him in the face committed conscience-shocking behavior); Allen v. School Dist. of Phila., 2006 WL 1997373, at

*4 (E.D. Pa. July 12, 2006) (when teacher allegedly allowed student to leave class, then chased her down the hall and slammed her against a wall with such force that her chin and mouth began bleeding, complaint sufficiently alleged conscience-shocking behavior and motion to dismiss was denied).

Plaintiffs argue that the face scrubbing occurred in the absence of a discernible government interest, but the Court would not be required to accept this allegation if presented in the Amended Complaint, much less in a brief in opposition to a motion to dismiss. Rather, the discernible government interest is manifest in the description of the incident: it was the removal of a prohibited tattoo on L.M.'s face while she was at school.[8] The School District had a discernible government interest in not allowing L.M. to remain in school with a tattoo on her face. See Blau v. Fort Thomas Public Sch. Dist., 401 F.3d 381, 396 (6th Cir. 2005) (parents did not have fundamental right to exempt children from school dress code).

Similarly, even accepting Plaintiffs' allegations as true, the force applied to remove the tattoo appears to have been in a good faith effort to maintain or restore discipline, rather than maliciously and sadistically for the very purpose of causing harm (Plaintiffs do not allege otherwise).[9] Third, the Amended Complaint alleges that the removal of the tattoo was "with such force that bruising, redness and swelling resulted around L.M.'s eye area." (Am. Compl. ¶ 45.) Although this is unfortunate, it does not suggest "a serious injury" and the Amended Complaint does not indicate that L.M. had ongoing medical treatment resulting from this incident. See Shawn H. v. Wienk, 2014 WL 4792247, at *4 (W.D. Pa. Sept. 23, 2014) (when

_____

[8] Defendants state that temporary tattoos are prohibited by the school dress code (ECF No. 15 at 5 n.4) and Plaintiffs do not contend otherwise.
[9] As the Court of Appeals explained, the term "sadistic" in this context means only that the alleged offender intended harm, not that she took pleasure from the injury. Gottlieb, 272 F.3d at 175 n.1.

teacher choked student and slammed his head against a wall, resulting in a concussion, neck

sprain, depression, anxiety and nightmares, this action shocked the conscience).  Finally, with

respect to the factor of the amount of force applied, the Court cannot make this determination

and the Amended Complaint alleges that the force employed was excessive.  Nevertheless,

because the other three factors do not support a claim, this factor alone would not be material.

See JGS, 737 F. Supp. 2d at 458 n.4 (although jury could conclude that the action of placing

liquid hand sanitizer in JGS's mouth represented an excessive amount of force to meet the

legitimate objectives, because of the court's analysis of the other three factors, this issue was not

material).

Therefore, with respect to Count I, the motion to dismiss will be granted.  Moreover,

since Count I fails to state a claim, Plaintiffs cannot maintain Count II, which alleges that

Defendants demonstrated reckless indifference to the constitutional violation alleged in Count I.

In addition, Defendants argue that Plaintiffs have not pleaded that the School District was on

notice that Jane Doe had a propensity for engaging in conscience-shocking behavior with respect

to students and yet failed to act to prevent this incident.  See Stoneking v. Bradford Area Sch.

Dist., 882 F.2d 720, 722 (3d Cir. 1989).  Therefore, Count II will also be dismissed.

In Count IV, Plaintiffs alleges a claim of municipal liability.  The Court of Appeals has

stated that:

> In Monell, the Supreme Court held that a municipality can be found liable
> under § 1983 only when the municipality itself causes the constitutional violation
> at issue. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103
> L.Ed.2d 412 (1989). In order to impose liability on a local governmental entity for
> failing to preserve constitutional rights, a plaintiff bringing a § 1983 claim must
> establish that: (1) she possessed a constitutional right of which she was deprived;
> (2) the municipality had a policy; (3) the policy "amount[ed] to deliberate
> indifference" to the plaintiff's constitutional right; and (4) the policy was the
> "moving force behind the constitutional violation." Id. at 389-91, 109 S.Ct. 1197
> (internal quotation marks omitted). "'[D]eliberate indifference' is a stringent

standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

<u>Vargas v. City of Philadelphia</u>, 783 F.3d 962, 974 (3d Cir. 2015).

"It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." <u>Mulholland v. Government Cty. of Berks, Pa.</u>, 706 F.3d 227, 238 n.15 (3d Cir. 2013). As explained above, Plaintiffs have not alleged a basis for liability with respect to the hospital incident, the tattoo incident, or the music class incident. In addition, Defendants argue that Plaintiffs have not pleaded the existence of a "policy," that is, "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," <u>Monell</u>, 436 U.S. at 690; or a "custom," that is, governmental action that "has not received formal approval through the body's official decisionmaking channels," <u>id.</u> at 691. <u>See</u> <u>Tarasovich v. Kocsis</u>, 2016 WL 6636830, at *6-7 (W.D. Pa. Nov. 9, 2016).

Plaintiffs also contend that the School District should be held liable based on three incidents that occurred <u>after</u> the music class incident: 1) L.M. was forced to attend a second-grade class instead of her fourth-grade music class;[10] 2) L.M. was cited "as a scapegoat" at a school assembly as an example of failing to get in line for class transitions; and 3) L.M. was not allowed to go on a field trip.[11] However, they have failed to identify a constitutional right of which L.M. was deprived. Issues of public education are generally "committed to the control of state and local authorities." <u>Goss v. Lopez</u>, 419 U.S. 565, 578 (1975) (citation omitted).

Plaintiffs have not cited and the Court has not found any authority for a claim that an

---

[10] Defendants contend that this occurred only once, but the Amended Complaint alleges that it occurred "for some time thereafter."

[11] Defendants indicate that L.M. was not permitted to go on the field trip because "enhanced supervision was not available" (ECF No. 15 at 12) and Plaintiffs respond that the school had time to make proper arrangements (ECF No. 18 at 12). The Court need not delve into this dispute.

elementary school student has a constitutional right to attend a particular class or to go on a school field trip. See, e.g., Sonkowsky v. Board of Educ., 2002 WL 535078, at *4 (D. Minn. Apr. 8, 2002) (student had no constitutional right to wear a Packers jersey in a class photo, to have his unsatisfactory homework assignment posted on the bulletin board, to participate in an optional parade or to go on a class field trip). Thus, even accepting Plaintiffs' allegations as true, they do not state a claim for imposing liability on the School District under Monell. Therefore, with respect to Count IV, the motion to dismiss will be granted.

The Court of Appeals has held that, "whether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) dismissal 'must permit a curative amendment unless such an amendment would be inequitable or futile.'" Estate of Lagano v. Bergen County Prosecutor's Office, 769 F.3d 850, 861 (3d Cir. 2014) (quoting Phillips, 515 F.3d at 245). In this case, Plaintiffs have already amended the complaint once and it still suffers from the fatal flaws discussed above. For all the reasons expressed above, further amendment would be futile.

For the reasons explained above, the federal civil rights claims in Counts I-IV will be dismissed. Plaintiffs' remaining claims are asserted under state law, for IIED and willful misconduct.[12] Defendants move to dismiss these claims as well and Plaintiffs oppose such action. Prior to reaching these arguments, however, the Court must address the issue of supplemental jurisdiction.

Supplemental Jurisdiction

The supplemental jurisdiction statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that

---

[12] Count VII requests compensatory and punitive damages and Count VIII requests attorney's fees. Because the federal claims are being dismissed, Plaintiffs cannot receive damages under either count.

are so related to claims in the action within such original jurisdiction that they
form part of the same case or controversy under Article III of the United States
Constitution.

28 U.S.C. § 1367(a). Plaintiffs' state law claims in Counts V and VI arise out of the same

circumstances and are so related to their federal claims that they form part of the same case or

controversy. See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995). Therefore, the Court has

supplemental jurisdiction over them based on its original jurisdiction over Plaintiffs' federal civil

rights claims in Counts I-IV.

Subsection (c), however, provides that a district court may, in its discretion, decline to

exercise jurisdiction if any of four conditions are met. One of these conditions is if "the district

court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Court

of Appeals has held that "where the claim over which the district court has original jurisdiction is

dismissed before trial, the district court must decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide an

affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788

(3d Cir. 1995) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (other citations

omitted). The only possible consideration would be that the statutes of limitations on Plaintiffs'

state law claims have expired. However, Congress anticipated this issue and addressed it in the

supplemental jurisdiction statute:

The period of limitations for any claim asserted under section (a), and for
any other claim in the same action that is voluntarily dismissed at the same time
as or after the dismissal of the claim under subsection (a), shall be tolled while the
claim is pending and for a period of 30 days after it is dismissed unless State law
provides for a longer tolling period.

28 U.S.C. § 1367(d). This section ensures that Plaintiffs' state law claims will not be considered

time barred so long as they reassert them in state court within 30 days of the dismissal of this

action.  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000).

Therefore, Defendants' motion to dismiss will be granted with respect to the federal civil rights claims and the state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).  An appropriate order follows.

<u>ORDER</u>

AND NOW, this 8th day of November, 2017, for the reasons identified above,

IT IS HEREBY ORDERED that the motion to dismiss the Amended Complaint filed by

Defendants (ECF No. 14) is granted with respect to the federal civil rights claims and the state

law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).


<u>s/Robert C. Mitchell</u>
ROBERT C. MITCHELL
United States Magistrate Judge